IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:17-cv-02688-RM-KMT

SANUVAIRE, LLC,

    Plaintiff,

v.

SUTRAK CORPORATION,

    Defendant.

---

**ORDER**

---

This matter is before the Court on Defendant's motion for summary judgment (ECF No. 955) and six other motions that are pending in this case (ECF Nos. 957-961, 993). Plaintiff filed this lawsuit after Defendant refused to pay a bill. The seventy-one-page complaint expands a relatively straightforward billing dispute to encompass multiple issues that have arisen throughout the parties' business relationship. But the fifteen asserted claims overlap significantly and, for the most part, lack merit. Therefore, as explained below, the Court grants in part and denies in part the motion for summary judgment, denies Plaintiff's motion to amend the complaint, grants Defendant's motion to strike two other pending motions, denies as moot Plaintiff's motion to supplement, and grants Plaintiff's motion for leave to file a corrected motion.

**I.**     **LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

Where, as here, the moving party does not bear the ultimate burden of persuasion at trial, it can meet its initial burden by pointing out the lack of evidence on an essential element of the nonmoving party's claim. *Adams v. Am Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). At that point, the burden shifts to the nonmoving party to identify sufficient evidence that is pertinent to the material issue by reference to an affidavit, deposition transcript, or specific exhibit. *Id.*

## II.     BACKGROUND

Defendant manufactures heating, ventilation, and air conditioning ("HVAC") units for transit buses. (ECF No. 1008-1 at ¶ 1.) Plaintiff sells air purification systems known as

ultraviolet germicidal irradiation ("UVGI") kits that can be installed in Defendant's HVAC units. (*Id.* at ¶ 11.)

In 2010, North American Bus Industries, Inc. ("NABI"), a bus manufacturer, was awarded a contract to build several hundred buses for Dallas Area Regional Transit ("DART"). (*Id.* at ¶ 13.) The buses were to be purchased in phases and were to include Defendant's HVAC units installed with UVGI kits from JKA Company ("JKA"). (*Id.*) For years, Defendant ordered UVGI kits from JKA, installed them in its HVAC units, and sent them to NABI to fill DART's bus orders. (*Id.* at ¶ 19.) Defendant's price for each UVGI kit was $1,575 and did not change even after Plaintiff acquired JKA and upgraded the UVGI kit with an improved ballast. (*Id.* at ¶ 32.)

In 2014, NABI was acquired by New Flyer Industries ("New Flyer"). (*Id.* at ¶ 22.) New Flyer planned to fill DART's pending orders using the same design NABI had used, but it wanted to use a new design for future orders. (*Id.*) To get the new design approved by DART, New Flyer had to build two "pilot" buses for testing. (*Id.* at ¶ 26.)

In July 2015, JKA's founder died and his stepdaughter began managing the business. (*Id.* at ¶ 23.)

In October 2015, New Flyer ordered two HVAC units from Defendant for the pilot buses. (*Id.* at ¶ 27.) Defendant filled the order using UVGI kits it had previously received from JKA and shipped the HVAC units to New Flyer in December 2015. (*Id.* at ¶ 28.) DART ultimately approved the pilot buses, allowing New Flyer to implement the new design on its next order. (*Id.* at ¶ 56.) To fill that order, Defendant ordered 55 UVGI kits from JKA on February 12, 2016. (*Id.* at ¶ 31.)

Meanwhile, JKA was in the process of upgrading its UVGI kit with a new ballast. (*Id.* at ¶ 30.) Plaintiff was officially formed on February 18, 2016, and on the same day, it entered an agreement with JKA to acquire all its assets, including Defendant's latest order. (*Id.* at ¶¶ 31, 36.) Plaintiff informed Defendant about the acquisition on February 29, 2016, while stating that it was "doing business as" JKA. (Id. at ¶ 41.) In the months that followed, Plaintiff repeatedly represented that it was closely connected with JKA, including in its correspondence with Defendant. (*Id.* at ¶ 44.)

On March 10, 2016, DART approved Plaintiff's upgraded UVGI kit for use in its buses. (*Id.* at ¶ 56.) Plaintiff shipped upgraded kits to Defendant in phases to fill its latest order. (*Id.* at ¶¶ 33, 51.) On March 28, 2016, Defendant amended that order to be for 49 kits instead of 55. (*Id.* at ¶ 31.) When Defendant installed an upgraded kit in one of the pilot buses, it discovered that Plaintiff had used butt-splice connectors in the ballast wiring, which DART's specifications did not allow. (*Id.* at ¶ 55.) In May 2016, Defendant informed Plaintiff about the wiring issue and returned 28 kits that had already been delivered. (ECF No. 1 at ¶ 48.) Plaintiff determined that 5 of the kits were completely damaged and unusable and shipped them back to Defendant so that it could investigate what had happened. (*Id.* at ¶ 53.) At a June 2016 meeting, Defendant refused to accept responsibility for damaging the kits while insisting that they were reparable. (*Id.* at ¶ 63.) Plaintiff told Defendant not to use the damaged kits. (ECF No. 1 at ¶ 103.) In addition, the parties were having trouble agreeing on terms of a nondisclosure agreement. (ECF No. 1008-1 at ¶¶ 68-71.)

In August 2016, Plaintiff completed the order for 49 UVGI kits and sent Defendant a final invoice for $52,754.63, the cost of 33 UVGI kits plus a handling fee. (*Id.* at ¶ 67.) Meanwhile, Defendant began an audit of its transactions with JKA and Plaintiff. (*Id.* at ¶ 61.)

4

In connection with the audit, Defendant "request[ed] 'proof of shipment' of the products listed on three specific invoices from JKA in 2013 and 2014" (*id.* at ¶ 64) that, according to Defendant, totaled $39,375 (ECF No. 1 at ¶ 109). Plaintiff initially refused to provide "old shipping records" from "a different company." (*Id.* at ¶ 110.) When Plaintiff sent a payment reminder regarding the final invoice, Defendant accused Plaintiff of overbilling, stating that according to its records it had received 494 kits from JKA and Plaintiff but had been billed for 519. (*Id.* at ¶ 115.) Defendant attached a spreadsheet it had created, showing details related to its transactions with JKA and Plaintiff going back to 2012. (*Id.*) According to the spreadsheet's bottom line, Defendant had been invoiced for 564 units but had received only 544 units. (ECF No. 1008-1 at ¶ 62.) Plaintiff requested documentation to support Defendant's claim of overpayment, but Defendant did not respond. (ECF No. 1 at ¶ 117.) Plaintiff also relented to Defendant's request for shipping receipts related to the disputed JKA invoices (*id.* at ¶ 119), but Defendant contends the documentation Plaintiff sent corresponds to the wrong invoices (ECF No. 1 at ¶ 120).

Defendant issued a check to Plaintiff for $13,379.63, which is $39,375 less than the final invoice. (ECF No. 1008-1 at ¶ 67.) In a later e-mail, Defendant provided a new explanation for refusing to pay the final invoice in full, stating that based on its records, it had ordered a total of 543 kits but had paid for 544, resulting in a payment discrepancy of $33,552.50. (ECF No. 1 at ¶ 124.) Plaintiff refused to accept the partial payment (ECF No. 1008-1 at ¶ 72), and this lawsuit followed.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Breach of Contract (First and Second Causes of Action)

To state a claim for breach of contract under Colorado law, a plaintiff must show (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc).

In its first two causes of action, Plaintiff alleges that it performed its contractual obligations by delivering the UVGI kits that Defendant ordered, yet Defendant refuses to pay in full the final invoice for $52,754.63. Defendant contends that it is entitled to a credit of $39,375 (i.e., the cost of 25 UVGI kits). But granting summary judgment in Defendant's favor on these claims would require the Court to find there is no genuine issue that Defendant paid for 25 more UVGI kits than it received. The current record provides no basis for such a conclusion.

Defendant's reliance on the spreadsheet mentioned above is insupportable. The spreadsheet contains empty fields, unclear entries, and unexplained notations.[1] By no means does it establish the relevant transaction history as a matter of undisputed fact. But even were the Court to accept the spreadsheet's bottom line at face value, it still does not support Defendant's position. According to the spreadsheet, Defendant received 20 fewer UVGI kits than it was billed for, yet Defendant currently claims it is entitled to a credit for the cost of 25 kits. The spreadsheet indicates Defendant was billed for $33,352.50 more than it paid, yet Defendant currently claims it is entitled to a credit of $39,375. In other words, the spreadsheet

---

[1] E.g., "invoice paid twice," "no packing slip," and "charged for 5 returned kits??" (ECF No. 955-30 at 2-3).

sheds absolutely no light on whether Defendant's failure to perform by paying the final invoice is justified.[2]

Nor do Defendant's other contentions show the absence of a genuine issue on Plaintiff's breach of contract claims. Defendant contends that Plaintiff "refused to provide any assistance in clarifying the billing questions" it had. (ECF No. 955 at 11.) But Defendant's "billing questions" do not establish the absence of a genuine issue as to whether it may justifiably claim a $39,375 credit on Plaintiff's final invoice. Although Defendant concedes that it owes Plaintiff $13,379.63 (ECF No. 955 at 11), there clearly is a genuine issue as to what additional amount, if any, Defendant owes Plaintiff. Accordingly, Defendant is not entitled to summary judgment on these claims.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing (Third Cause of Action)

The duty of good faith and fair dealing applies when one party to a contract "has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App. 2007). "[T]he implied covenant of good faith and fair dealing is breached when a party uses discretion conferred by the contact to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." *Id.*

Plaintiff asserts that Defendant breached the covenant by several means. Defendant argues that Plaintiff fails to establish the existence of any discretionary term that would support such a claim. The Court finds that Defendant is entitled to summary judgment on this issue because Plaintiff has not identified any discretionary contractual term that corresponds to any of

---

[2] Based on this determination, the Court need not address, at this stage of the case, Defendant's contention that Plaintiff is estopped from arguing that it is not a continuation of JKA. (*See* ECF No. 955 at 12-17.)

Defendant's alleged misconduct and because the conclusory allegations in the complaint are insufficient to show the existence of a genuine issue with respect to this claim.

First, Plaintiff contends Defendant failed to update a purchase order to reflect Plaintiff's name rather than that of JKA. But it is undisputed that the February 12, 2016, purchase order was placed six days before Plaintiff was officially formed and weeks before Plaintiff formally introduced itself to JKA's customers. (ECF No. 1008-1 at ¶¶ 36, 41-42.) Moreover, Plaintiff fails to explain how it was deprived of a benefit of its contract with Defendant by its alleged refusal to change the name on an invoice—particularly where Plaintiff continued to represent that it was "doing business as JKA" in its correspondence with Defendant. (*See id.* at ¶ 44.)

Second, Plaintiff contends Defendant provided inconsistent reasons for refusing to pay the final invoice. But the Court has already determined that there are genuine issues of material fact with respect to whether Defendant breached its contractual obligations to Plaintiff by refusing to pay the final invoice. Plaintiff's damages for those claims depend on Defendant's nondiscretionary contractual obligations. Plaintiff has not identified a discretionary obligation that Defendant might also have violated under the circumstances. Plaintiff fails to show that it suffered any additional damages simply because over time Defendant provided different reasons for refusing to pay the bill.

Third, Plaintiff contends Defendant changed the quantity on its final purchase order from 55 to 49. However, Plaintiff does not make any showing that Defendant acted dishonestly or outside of accepted commercial practices by doing so.

Fourth, Plaintiff contends Defendant used JKA's UVGI kits to fill DART's final order. However, on the current record, this argument rests entirely on speculation. It is undisputed that JKA's UVGI kits were used on the pilot buses; the upgraded kits were not yet approved when

Defendant filled that order. Plaintiff has identified no evidence that Defendant used JKA's UVGI kits to fill any orders once the upgraded kits were approved by DART. It is also undisputed that on February 12, 2016, Defendant issued a purchase order for 55 UVGI kits (later revised to be for 49 kits) to fill a DART order for 46 buses. Plaintiff contends that this was not DART's final order for buses, citing Defendant's 2016 invoices to New Flyer. But even if these invoices establish that Defendant billed New Flyer for 78 HVAC units in 2016, it does not follow that Defendant must have received additional orders for buses and filled them using JKA's UVGI kits. For one thing, the invoices do not indicate that dates when then the HVAC units were manufactured. For another, Plaintiff admits that it sometimes used JKA's part numbers, so it is reasonable to assume Defendant may have used them as well. Speculation is insufficient to show a genuine issue exists. In the absence of supporting evidence, Plaintiff's unfounded contentions that DART placed subsequent orders for additional buses from New Flyer and that Defendant filled those orders by installing JKA's UVGI kits are insufficient to establish a genuine issue of material fact.

Finally, Plaintiff contends Defendant refused to sign a nondisclosure agreement after orally agreeing to its terms. (ECF No. 1 at 39-43.) But Plaintiff has provided no meaningful explanation as to how Defendant acted dishonestly or the negotiations over the nondisclosure agreement deprived it of any term for which it bargained.

In its response to the motion for summary judgment, Plaintiff does not identify any additional evidence to support this claim. Instead, Plaintiff persists in making conclusory arguments, such as the following: "Defendant used its position in various ways to adversely affect [Plaintiff]" and "Defendant abused its discretion in negotiating on behalf of [Plaintiff]" (ECF No. 984 at 13-14). Plaintiff also raises a handful of new arguments in support of this

claim. Plaintiff argues that Defendant "concealed" New Flyer's order for two pilot buses and did not inform Plaintiff that it was using JKA's UVGI kits that it already had to fill the order. Plaintiff also argues that Defendant refused Plaintiff's request to provide a copy of its contract with DART and failed to disclose the billing issue at the heart of this case until after Plaintiff delivered all the UVGI kits for the final order. But these arguments do not cure the relevant deficiencies because Plaintiff has not shown that Defendant had any obligation to disclose these matters, that refusing to do so violated a discretionary term of its contract with Plaintiff, or that Defendant had determined there was a billing discrepancy before the final invoice came due.

For these reasons, the Court concludes that there is no genuine issue of material fact as to whether Defendant breached the implied covenant of good faith and fair dealing. Defendant is entitled to summary judgment on this claim.

### C. Slander of Goods (Fourth Cause of Action)

To state a claim for product disparagement under Colorado law, a plaintiff must establish the following elements:

> (1) a false statement; (2) published to a third party; (3) derogatory to the plaintiff's business in general, to the title to his property, or its quality; (4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest, or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) thus, causing special damages.

*Teilhaber Mfg. Co. v. Unarco Materials Storage*, 791 P.2d 1164, 1166-67 (Colo. App. 1989).

In the complaint, Plaintiff seems to allege that Defendant slandered its goods by installing "unapproved" UVGI kits in some of the HVAC units for New Flyer's final order. (ECF No. 1 at ¶ 191.) Defendant argues there is no genuine issue that it made no false statement about Plaintiff's UVGI kits. Defendant further argues that Plaintiff failed to specifically plead and establish special damages.

As discussed above, it is undisputed that Plaintiff's upgraded UVGI kit was not approved until March 2016, months after the HVAC units for the pilot buses were delivered to New Flyer. Moreover, Plaintiff offers nothing but speculation to support its contention that Defendant installed JKA's UVGI kits in any HVAC units delivered after DART approved the upgraded kit. Thus, there is no evidence to support Plaintiff's assertion of a false statement by Defendant.

In its response to the motion for summary judgment, Plaintiff attempts to add new allegations that Defendant disparaged Plaintiff's UVGI kits when it "made affirmations to DART regarding UVGI technology, availability, and cost" to persuade DART to approve another type of kit that was being made by Comfort Climate Technology, Inc. ("CCT"), a company closely associated with Defendant. (ECF No. 984 at 14.) But even on this theory, Plaintiff still fails to identify any false statement by Defendant that would support a claim. There is no evidence that Defendant had any obligation to promote Plaintiff's UVGI kits, and Plaintiff fails to show how the fact that CCT made a competing air purification system is relevant. Even accepting Plaintiff's assertion that Defendant expressed negative opinions about Plaintiff's product, "'a simple expression of opinion based on disclosed or assumed non-defamatory facts is not itself sufficient for an action of defamation.'" *Simmons v. Prudential Ins. Co. of Am.*, 641 F. Supp. 675, 686 (D. Colo. 1986) (quoting Restatement (Second) of Torts § 566 (1976)). Unsupported speculation about statements that might have been made to DART or any other entity is not enough to withstand summary judgment. Moreover, Plaintiff makes no attempt to address the other deficiency identified by Defendant—Plaintiff's failure to make any showing of special damages. Therefore, Defendant is entitled to summary judgment on this claim as well.

### D. Violation of the Lanham Act (Fifth Cause of Action)

In its fifth cause of action, Plaintiff alleges that Defendant "falsely identified to DART [JKA's] product as [Plaintiff's] product" (ECF No. 1 at ¶ 204), citing the following provisions of the Lanham Act:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). This claim appears to be a repackaging of the same allegations that animate Plaintiff's other claims—that Defendant installed JKA's UVGI kits in some HVAC units while representing to DART that they were Plaintiff's upgraded kits.

In seeking summary judgment on this claim, Defendant argues that it "never made any representation to DART, or anyone else, that the JKA products installed in HVAC units manufactured for DART were anything other than what they actually were—DART-approved JKA products." (ECF No. 955 at 23.) As discussed above, there are no disputed issues of material fact related to Defendant providing HVAC units for New Flyer's final order, which included the two pilot buses. Nor is there any evidence supporting Plaintiff's allegation that Defendant received orders from New Flyer that it did not disclose to Plaintiff and that Defendant filled those orders using JKA's UVGI kits. Moreover, to the extent the documents in the record

12

reflect any confusion between JKA's UVGI kits and Plaintiff's upgraded kits, Plaintiff admits that while it was in the process of forming, it used the same part numbers JKA had used. (ECF No. 1008-1 at ¶ 30.) Thus, Plaintiff has not established the existence of a genuine issue with respect to this claim.

> **E. Fraud and Misrepresentation, Fraud in the Inducement, Negligence, and Negligent Misrepresentation (Sixth, Seventh, Eighth, and Ninth Causes of Action)**

Plaintiff's next four claims are analyzed together because they rely on the same constellation of torts, alleging that Plaintiff was damaged by Defendant's misrepresentations and negligence. Defendant argues that these claims are barred by the economic loss rule because Plaintiff cannot identify an independent duty, outside of the parties' contract, giving rise to its damages. Plaintiff makes no mention of the economic loss rule in its response brief and utterly fails to respond to this argument. The Court finds that the alleged conduct underlying these claims implicates Defendant's contractual obligations to Plaintiff, and therefore there is no genuine issue that the economic loss rule bars these claims.

Under Colorado law, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) (en banc). The rule was adopted "to maintain the boundary between contract law and tort law." *Id.* at 1259. "Absent an independent duty under tort law, the parties are held to the terms of their bargain." *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008).

Plaintiff's failure to identify (or even attempt to identify) an independent tort duty is fatal to these claims. Plaintiff's asserted issues about billing, disclosure of relevant details related to

13

orders, and mishandling UVGI kits before returning them stem directly from the parties' contractual relationship. Conclusory allegations and underdeveloped legal theories are insufficient to establish the existence of an independent tort duty. Accordingly, Defendant is entitled to summary judgment on these claims because they are barred by the economic loss rule.

      **F.    Intentional Interference (Tenth and Eleventh Causes of Action)**

Colorado recognizes the torts of interference with a contractual relationship and interference with prospective business advantage. *See Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 22-23 (Colo. App. 1981). "To sustain a claim of intentional interference with contract, the plaintiff must prove that the defendant (1) was aware of the existence of the contract; (2) intended that one of the parties breach the contract; (3) induced the party to breach the contract or make it impossible for him or her to perform; and (4) acted 'improperly' in causing the breach." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009). To state a claim for interference with prospective business relations, "the plaintiff must show that there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope." *Id.* at 1119 (quotation omitted).

Plaintiff's interference claims appear to be based on the theory that Defendant acted inappropriately by persuading DART to authorize CCT's product for use on its buses, which would displace the need for Plaintiff's UVGI kits in future orders. Defendant argues it is entitled to summary judgment on these claims because there is no evidence that Defendant interfered with any business relationship between Plaintiff and another company or that Plaintiff had a reasonable expectation of forming such a relationship that would have resulted but for any conduct by Defendant. The Court agrees with Defendant.

Plaintiff's claim for intentional interference with contract fails because there is no evidence of a contract between Plaintiff and DART and Plaintiff has not shown any conduct by Defendant that induced Plaintiff or another party to breach any contractual duty. Plaintiff's claim for intentional interference with business advantage fails because there is no evidence that would show a reasonable likelihood that any contract would have resulted but for Defendant's conduct. Plaintiff's expectations regarding future orders from DART were, on the current record, purely speculative. Accordingly, Defendant is entitled to summary judgment on these claims.

### G.  Promissory Estoppel and Unjust Enrichment (Twelfth and Thirteenth Causes of Action)

Promissory estoppel and unjust enrichment are equitable remedies and are designed for circumstances in which other remedies are unavailable. *See W. Ridge Group, LLC v. First Trust Co. of Onaga*, No. 09-1358, 211 WL 635567, at *7 (10th Cir. Feb. 23, 2011) (unpublished). They are not available where, as here, it is not disputed that a contract exists between the parties and the transactions at issue are directly related to that contractual relationship. Therefore, summary judgment in Defendant's favor is appropriate on these claims.

### H.  Unfair Competition (Fourteenth Cause of Action)

To state an unfair competition claim, a plaintiff bears the burden of establishing that the defendant's use of the plaintiff's marks was likely to cause confusion. *See Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1144 (10th Cir. 2013). Defendant argues that Plaintiff fails to allege "facts showing that [Defendant] improperly used any of [Plaintiff's] marks or that any confusion would have resulted or did in fact occur." (ECF No. 955 at 31.) In its response brief, Plaintiff fails to address this contention in a meaningful manner. The Court finds there are no

allegations to support this claim that have not already been addressed elsewhere in this order. Accordingly, Defendant is entitled to summary judgment on this claim.

I. **Violation of the CCPA (Fifteenth Cause of Action)**

To state a claim under the Colorado Consumer Protection Act ("CCPA"), the plaintiff must show

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003) (en banc). Defendant argues that Plaintiff's allegations fail to establish any actual damages suffered by Plaintiff or any public impact resulting from Defendant's alleged conduct. In its response brief, Plaintiff fails to address these contentions in a meaningful manner. The Court finds there are no allegations to support this claim that have not already been addressed elsewhere in this order. Accordingly, Defendant is entitled to summary judgment on this claim as well.

## IV. OTHER MOTIONS

Having determined that Defendant is entitled to summary judgment on all but the first two causes of action asserted by Plaintiff, the Court now turns to the six other motions that are pending in this case.

A. **Motion to Amend the Complaint**

A party seeking leave to amend after a scheduling deadline must first establish "good cause" under Fed. R. Civ. P. 16(b)(4) for doing so. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). The standard under this rule "focuses on the

16

diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment" and is satisfied when "scheduling deadlines cannot be met despite a party's diligent efforts." *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (quotation omitted).

Plaintiff moved to amend the complaint on January 18, 2019, ten months after the deadline for doing so. (ECF No. 957.) The proposed amended complaint includes numerous changes with respect to the claims against Defendant. In addition, Plaintiff seeks to add CCT as a party to this case, contending that Plaintiff did not "learn[] of the material bases for its claims against CCT" until taking two depositions in November 2018.

Plaintiff makes no attempt to explain why it could not have amended the claims against Defendant sooner. To explain why CCT could not have been added sooner, Plaintiff argues that "the CCT issue only arose" in a November 2018 deposition and that a "search of the June deposition transcripts reveals no reference to CCT at all." (ECF No. 997 at 2.) Hedging, Plaintiff also contends that "the mere mention of CCT" in the June 2018 would not have been sufficient to inform Plaintiff that it might have claims against CCT.

The record belies any claim of reasonable diligence by Plaintiff. The June 2018 deposition mentioned above reveals both CCT's existence and the fact that it makes air purification systems. (ECF No. 955-2 at 4, pp. 9-11.) The deposition also reveals that the same individual was the majority shareholder of both CCT and Defendant. (*Id.* at 3-4, pp. 7-9.) Further, the possibility that CCT's products might compete with Plaintiff's was discussed at that deposition. (*Id.* at 45, pp. 173-74). "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Pumpco*, 204 F.R.D. at 668 (quotation omitted). The Court finds Plaintiff should have been aware in June 2018 of any potential claims against CCT.

17

Therefore, the Court denies Plaintiff's motion to amend the complaint.

### B.   Motion for Determination of Law, Motion for Partial Summary Judgment, Motion to Supplement, and Motion to Deny or Strike

Plaintiff has filed a "Rule 56 Motion for Determination of Law" (ECF No. 958), a "Motion for Partial Summary Judgment" (ECF No. 959), and a "Supplement to Plaintiff's Motion for Partial Summary Judgment" (ECF No. 960). Defendant has filed a motion to deny or strike these motions (ECF No. 961) because they do not comply with this Court's Practice Standards.[3] Specifically, the motions fail to include a separate statement of undisputed material facts. *See* Civ. Practice Standard IV.C.2.c.2 (current version effective Aug. 1, 2019). The Court agrees that these motions may be stricken on this basis.

Further, a plaintiff may file only one Fed. R. Civ. P. 56 motion without obtaining permission from the Court. Civ. Practice Standard IV.N.3.a. As explained below, the Court grants Plaintiff's motion to file a corrected Fed. R. Civ. P. 56 motion; therefore, this Practice Standard provides an additional reason to strike these redundant motions. *See* Civ. Practice Standard IV.G.3. Plaintiff's motion to supplement its (now stricken) previous motion for partial summary judgment is denied as moot.

### C.   Motion for Leave to File Corrected Motion for Partial Summary Judgment

The Court grants Plaintiff's motion for leave to file a corrected motion for partial summary judgment (ECF No. 993). Although Defendant opposes the motion, the Court finds that judicial economy is best served by allowing the amendment. Defendant will have twenty-one days from the entry of this Order to respond to the motion. Given the Court's ruling on Defendant's motion for summary judgment, Defendant needs to respond only to Plaintiff's

---

[3] Although Plaintiff opposes the motion, it concedes that its motion for partial summary judgment, filed by prior counsel, does not comport with the Practice Standards. (ECF No. 993 at 2.)

argument on its claims for breach of contract. Plaintiff may file a reply within fourteen days of Defendant's response.

V. **CONCLUSION**

Therefore, the Court ORDERS:

(1) Defendant's motion for summary judgment (ECF No. 955) is GRANTED IN PART and DENIED IN PART as stated herein;

(2) Plaintiff's motion to amend (ECF No. 957) is DENIED;

(3) Plaintiff's Fed. R. Civ. P. 56 motions (ECF Nos. 958, 959) are STRICKEN;

(4) Plaintiff's motion to supplement (ECF No. 960) is DENIED AS MOOT;

(5) Plaintiff's motion to strike (ECF No. 961) is GRANTED; and

(6) Plaintiff's motion for leave to file a correct motion for partial summary judgment (ECF No. 993) is GRANTED, and the Clerk is directed to enter the proposed motion (ECF No. 993-1) and statement of facts (ECF No. 993-2) as separate docket entries, effective as of this date.

DATED this 4th day of September, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge